UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

| | |
|---|---|
| Case No. | LA CR11-00312 JAK |
| Date | October 20, 2020 |

Present: The Honorable   John A. Kronstadt, United States District Judge

Interpreter   N/A

| Valencia Vallery | Not Reported | Not Present: Amanda Elbogen |
|---|---|---|
| *Deputy Clerk* | *Court Reporter/Recorder* | *Assistant U.S. Attorneys* |

| U.S.A. v. Defendant(s): | Present | Cust. | Bond | Attorneys for Defendants: | Present | App. | Ret. |
|---|---|---|---|---|---|---|---|
| Albert Curiel | No | X | | Ashwini S. Mate | No | | |

Proceedings: **(IN CHAMBERS) ORDER RE MOTION FOR COMPASSIONATE RELEASE UNDER 18 U.S.C. § 3582(c)(1)(A) (DKT. 125)**

I. **Introduction**

On September 1, 2011, Albert Curiel ("Curiel" or "Defendant") pleaded guilty to one count of knowing and intentional distribution, and aiding and abetting the distribution, of approximately 109.8 grams of methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1), 21 U.S.C. § 841(b)(1)(A)(viii), and 18 U.S.C. § 2. *See* Dkt. 3 at 6 (indictment); Dkt. 23 (minutes of change of plea hearing).

On March 1, 2012, Defendant was sentenced to a term of 176 months, to be followed by five years of supervised release. Dkt. 47 at 32 (minutes of sentencing). On April 10, 2015, following amendments to the United States Sentencing Guidelines, Defendant's sentence was reduced to 151 months pursuant to 18 U.S.C. § 3582(c)(2). Dkt. 102. On February 21, 2018, pursuant to *United States v. Brito*, 868 F.3d 875 (9th Cir. 2017), Defendant's sentence was further reduced to 139 months under 18 U.S.C. § 3582(c)(2). *See* Dkt. 124 (Amended Judgment). Defendant is currently incarcerated at the United States Penitentiary in Lompoc, California ("USP Lompoc"). Dkt. 125 at 12.

On September 3, 2020, Defendant filed a Motion for Compassionate Release Under 18 U.S.C. § 3582(C)(1)(A) (the "Motion" (Dkt. 125)). The Government filed an Opposition to the Motion on September 15, 2020 (the "Opposition" (Dkt. 129)), and Defendant filed a reply on September 18, 2020 (Dkt. 132)).

Pursuant to Fed. R. Crim. P. 43(b)(4), it is not required that a defendant be present in connection with a process that "involves the correction or reduction of sentence under Rule 35 or 18 U.S.C. § 3582(c)." *See also Dillon v. United States*, 560 U.S. 817, 827-28 (2010). Further, based on a consideration of the matters presented by the Motion, it is determined that it is one that can be decided without a hearing. For the reasons stated in this Order, the Motion is **GRANTED**.

II. **Legal Standards**

**CRIMINAL MINUTES - GENERAL**

      A.      The First Step Act

In 2018, Congress passed the First Step Act. Pub. L. No. 115-391, 132 Stat. 5194. The statute amended the procedures through which a defendant may seek a reduction of a sentence based on a request for "compassionate release." Such requests are addressed at 18 U.S.C. § 3582(c)(1)(A), which provides the following procedures:

> The court may not modify a term of imprisonment once it has been imposed except that . . . the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A).

Under these terms, a request for compassionate release requires a three-step process. *First*, before commencing a judicial proceeding, a defendant must exhaust administrative remedies. A defendant can do so by either "exhaust[ing] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or waiting until "the lapse of 30 days from receipt of such a request by the warden of the defendant's facility." 18 U.S.C. § 3582(c)(1)(A). *Second*, upon receiving a compassionate release motion that is presented after administrative remedies have been exhausted, a district court evaluates whether "extraordinary and compelling reasons warrant such a reduction" and that such a reduction "is consistent with applicable policy statements issued by the Sentencing Commission." *Id. Third*, in assessing whether release would be appropriate, a district court "consider[s] the [sentencing] factors set forth in section 3553(a) to the extent that they are applicable." *Id.*

In a motion for compassionate release, the defendant "bears the initial burden to put forward evidence that establishes an entitlement to a sentence reduction." *United States v. Greenhut*, No. 2:18-CR-00048-CAS-1, 2020 WL 509385, at *1 (C.D. Cal. Jan. 31, 2020) (citing *United States v. Sprague*, 135 F.3d 1301, 1306-07 (9th Cir. 1998)).

      B.      Exhaustion of Administrative Remedies

            1.      <u>Positions of the Parties</u>

Defendant contends that he took the necessary steps to exhaust administrative remedies before filing the Motion. Dkt. 125 at 21. He states that he applied for compassionate release on June 6, 2020, and that the Warden at the facility denied it on July 6, 2020. *Id.*

The Government argues that the statute requires Defendant to exhaust all administrative remedies before commencing a civil action. It contends that the exhaustion requirement is jurisdictional, Dkt. 129 at 18, citing *Shaw v. Bank of America Corp.* ("[S]tatutorily-provided exhaustion requirements deprive the court of jurisdiction.") 946 F.3d 533, 541 (9th Cir. 2019) (quoting *Gallo Cattle Co. v. U.S. Dep't of Agric.*, 159 F3d 1194, 1197 (9th Cir. 1998)).

2. <u>Legal Standards for Statutory Exhaustion Requirements</u>

Procedural conditions, including a requirement to exhaust administrative remedies, may limit the jurisdiction of a district court. However, Congress must make clear its intent to do so. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 502 (2006). The statute must "speak in jurisdictional terms or refer . . . to the jurisdiction of the district courts." *Id.* (quoting *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 394 (1982)). Failure to comply with a jurisdictional limitation may not be excused by a court, even if the non-moving party does not object. Because "federal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction…they must raise and decide jurisdictional questions that the parties either overlook or elect not to press." *Henderson v. Shinseki*, 562 U.S. 428, 434 (2011).

Procedural conditions that do not limit jurisdiction have been characterized as "mandatory claims-processing rules." Such a rule is "'mandatory' in the sense that a court must enforce the rule if a party properly raises it." *Fort Bend Cnty., Tex. v. Davis*, 139 S. Ct. 1843, 1849 (2019) (quoting *Eberhart v. United States*, 546 U.S. 12, 19 (2005)). If the non-moving party does not object, these rules "may be waived or forfeited." *Hamer v. Neighborhood Housing Servs. of Chicago*, 138 S. Ct. 13, 17 & n.1 (waiver is the "intentional relinquishment or abandonment of a known right" and forfeiture is "the failure to make the timely assertion of a right") (internal citations omitted). The Supreme Court has "reserved whether mandatory claim-processing rules may be subject to equitable exceptions" that go beyond waiver and forfeiture. *Id.* at 18 n.3. The Ninth Circuit has concluded that certain claim-processing rules may be subject to equitable tolling. *See, e.g., Forester v. Chertoff*, 500 F.3d 920, 929 (9th Cir. 2007) (nonjurisdictional waiting period mandated by statute "may be forfeited, waived, or equitably modified").

The Supreme Court also has held that mandatory exhaustion requirements, which are distinct from claim-processing rules, may not be deemed waived under equitable principles, or similar ones, that could be applied by trial courts. "[M]andatory exhaustion statutes…establish mandatory exhaustion regimes, foreclosing judicial discretion." *Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016) (citing *Miller v. French*, 520 U.S. 327, 337 (2000); *McNeil v. United States*, 508 U.S. 106, 111 (1993)). In this context, a court may not excuse a failure to exhaust, even to take [special circumstances] into account." *Id.* at 1856. *See also Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001) ("[W]e will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise.").

Whether Congress has adopted such a mandatory exhaustion requirement is determined primarily by evaluating the text of the statute. The legislative history may also be considered as part of the analysis. *See Ross*, 136 S. Ct. at 1856-58 (emphasizing the text of the Prison Litigation Reform Act of 1995, and also considering its legislative history).

3. <u>Application</u>

a) Whether the Exhaustion Requirement is Jurisdictional or Mandatory

This Court has concluded previously that the exhaustion requirement, which "does not speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts," is mandatory, but not jurisdictional. *United States v. Neman*, No. 2:14-cr-00521 JAK, Dkt. 863 at 4 and n.4 (Mar. 30, 2020) (quoting *Arbaugh*, 546 U.S. at 502). The Ninth Circuit has not yet addressed this issue. However, the Fifth and Sixth Circuits have held that the requirement is not jurisdictional. *United States v. Franco*, 973 F.3d 465, 467 (5th Cir. 2020); *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020). Many district courts in the Ninth Circuit have reached the same

conclusion. *See, e.g.*, *United States v. Connell,* --- F. Supp. 3d ---, 2020 WL 2315858, at *2 (N.D. Cal. May 8, 2020) ("Neither the language, the context, nor the history of section 3582 clearly states that its exhaustion provision imposes a jurisdictional requirement."); *United States v. Vargas*, No. 3:16-cr-00015-SI-14, 2020 WL 3056794, at *3 (D. Or. June 9, 2020) (characterizing administrative exhaustion requirement as a "mandatory claim-processing rule"); *United States v. Arciero*, No. 13-001036 SOM, 2020 WL 3037073, at *5 (D. Haw. June 5, 2020) ("Congress did not label the mandatory statutory exhaustion requirement in § 3582(c)(1)(A)(i) as jurisdictional. *Fort Bend* instructs that the requirement should therefore be treated as nonjurisdictional."); *but see United States of America v. Risley*, No. 1:12-CR-0363 AWI, 2020 WL 4748513, at *3 (E.D. Cal. Aug. 17, 2020) ("The failure to exhaust administrative remedies as mandated by § 3582(c)(1)(A) is a jurisdictional failure.").

The Government's reliance on *Shaw* and *Gallo Cattle* is not persuasive. *Shaw* concerned the Financial Institutions Reform, Recovery, and Enforcement Act of 1989. That statute expressly provided that district courts would not have jurisdiction if a party had failed to exhaust administrative remedies. *See* 12 U.S.C. § 1821(d)(13)(D).[1] Further, Ninth Circuit decisions since *Gallo Cattle* have confirmed that "most exhaustion requirements established by Congress do not result in a loss of subject matter jurisdiction." *Kerr v. Jewell*, 836 F.3d 1048, 1058 n.7 (9th Cir. 2016) (quoting *Maronyan v. Toyota Motor Sales, U.S.A., Inc.*, 658 F.3d 1038, 1040 (9th Cir. 2011)); *see also McBride Cotton and Cattle Corp. v. Veneman*, 290 F.3d 973, 980 (9th Cir. 2002) (holding 7 U.S.C. § 6912(e)'s exhaustion requirement nonjurisdictional and that "not all statutory exhaustion requirements are created equal").

      b)      Whether Defendant Has Satisfied the Exhaustion Requirement

As Defendant has noted, the Opposition "contains [a] heading stating that Mr. Curiel has failed to exhaust administrative remedies, but the content of the opposition presents no argument to that effect." Dkt. 132 at 3 n.1. Nevertheless, the issue of exhaustion is addressed. *Cf. Arciero*, 2020 WL 3037073 at *5 (court is "obligated to enforce the statutory exhaustion requirement" if timely raised).

This Court has concluded that a defendant may file a compassionate release motion in a civil proceeding 30 days after the warden has receives the request, whether or not the warden has acted on the request within that time period. *United States v. Gutierrez*, No. 2:14-cr-00429-JAK-SS, Dkt. 2194 at 5 (C.D. Cal. Sept. 5, 2020). Again, the Ninth Circuit has not yet addressed this issue, but two other circuits have adopted this approach. *Alam*, 960 F.3d at 834 ("Prisoners who seek compassionate release have the option to take their claim to federal court within 30 days, no matter the appeals available to them."); *United States v. Harris*, 973 F.3d 170, 171 (3d Cir. 2020).

Defendant filed his request with the Warden of FCI Lompoc on June 6, 2020. That was more than 30 days before the Motion was filed. Dkt. 125 at 21. Therefore, Defendant has satisfied the statutory exhaustion requirement, and the merits of the Motion may be considered.

    C.    Extraordinary and Compelling Reasons and Sentencing Commission Policy Statements

        1.    <u>Legal Standards</u>

---

[1] "Except as otherwise provided in this subsection, no court shall have jurisdiction over (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or (ii) any claim relating to any act or omission of such institution or the Corporation as receiver."

Pursuant to § 3582(c)(1)(A), the United States Sentencing Commission is required to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t). Application Note 1 to U.S.S.G. § 1B1.13 identifies circumstances under which "extraordinary and compelling reasons exist." These include: (i) "Medical Condition of the Defendant," (ii) "Age of the Defendant," (iii) "Family Circumstances," and (iv) "Other Reasons." Under U.S.S.G. § 1B1.13, the "extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment." *Id.* at Application Note 2.

There may be other extraordinary and compelling grounds "[a]s determined by the Director of the Bureau of Prisons" that are distinct from the first three categories. U.S.S.G. § 1B1.13, Application Note 1. This final category is described as a "catch-all provision." *Rodriguez*, 424 F. Supp. 3d at 681. Because the Sentencing Commission has "never harmonized its policy statements with the [First Step Act]," the policy statements in U.S.S.G. § 1B1.13 "still assume compassionate release 'may be granted only upon motion by the Director of the Bureau of Prisons.'" *Id.* (quoting *United States v. Brown*, 411 F. Supp. 3d 446, 449 (S.D. Iowa 2019), *order amended on other grounds on reconsideration*, 457 F. Supp. 3d 691 (S.D. Iowa 2020)). These circumstances have created a "conundrum." *Rodriguez*, 424 F. Supp. 3d at 681 (quoting *Brown*, 411 F. Supp. 3d at 449).

Although the Ninth Circuit has not yet addressed this issue, the Second Circuit recently held that the First Step Act "freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release," and that "[n]either Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion." *United States v. Zullo*, No. 19-3218-CR, slip. op. at 17-18 (2d Cir. Sep. 25, 2020). Similarly, a "growing number [of district courts] . . . have concluded that, in the absence of applicable policy statements, courts 'can determine whether any extraordinary and compelling reasons other than those delineated in U.S.S.G. § 1B.1.13 cmt. n.1(A)-(C) warrant' compassionate release." *Rodriguez*, 424 F. Supp. 3d at 681 (quoting *Brown*, 411 F. Supp. 3d at 449).

      2.    <u>Application</u>

           a)    Medical Condition

Circumstances under "Medical Condition of the Defendant" include a "terminal illness," "i.e., a serious and advanced illness with an end of life trajectory." They also include the following circumstances:

    (ii)    The defendant is

        (I)    Suffering from a serious physical or medical condition,
        (II)   Suffering from a serious functional or cognitive impairment, or
        (III)  Experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13, Application Note 1.

Defendant has a "Body Mass Index of 34," which establishes that he is obese. Defendant also has the following medical conditions: hypertension, high cholesterol, hyperlipidemia and mild chronic kidney disease. Dkt. 125 at 14. These conditions are documented in medical records from the Bureau of Prisons. Dkt. 125-6 at

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

8-13, 41-47. Defendant argues that hypertension, obesity and hyperlipidemia greatly increase the risks associated with COVID-19, and that several district courts have granted compassionate release motions where the defendant seeking relief had these conditions. Dkt. 125 at 25-26; Dkt 132 at 7-8. The Government agrees that Defendant suffers from a "serious, chronic health condition" that is "potentially qualifying under the policy statement in light of the risk of infection of COVID-19." Dkt. 129 at 22.

Based on the evidence presented, Defendant has shown that he suffers from a "serious physical or medical condition" that "substantially diminishes" his ability "to provide self-care within the environment of a correctional facility." U.S.S.G. § 1B1.13, Application Note 1. Therefore, Defendant has made a sufficient showing to warrant compassionate release under 18 U.S.C. § 3582(c)(1)(A). Therefore, it is not necessary to review other potential extraordinary and compelling reasons for release.

      D.      Factors Under 18 U.S.C. § 3553(a) and Danger to Community

In the third step of the analysis, 18 U.S.C. § 3582 requires a consideration of "the factors set forth in section 3553(a) to the extent that they are applicable." Section 3553(a) presents several factors. Finally, a court must assess whether the moving party is a "danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13, Application Note 4.

           1.      <u>§ 3553(a) Factors and The Sentence as Amended</u>

Section 3553(a) includes the following factors: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established in the Sentencing Guidelines; (5) any pertinent policy statement issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims. *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (en banc); 18 U.S.C. § 3553(a)(1)-(7).

At sentencing, the Court applied the Sentencing Guidelines and imposed a sentence of 176 months. ████████████████████████████████████████████████████████████████████████████ The sentence of 176 months represented a downward departure pursuant to U.S.S.G. 5G1.3, given Defendant's undischarged term of imprisonment in Los Angeles County Superior Court, No. PA068151. Dkt 35 (Judgment and Commitment).

"On November 1, 2014, the [United States Sentencing] Commission issued Amendment 782 to its Sentencing Guidelines, which lowered the recommended sentences for certain drug crimes." *United States v. Navarro*, 800 F.3d 1104, 1107 (9th Cir. 2015). This reduced Defendant's Total Offense Level to 29, resulting in a reduced guidelines range of 151 to 188 months. Dkt. 101-1 at 17. On April 10, 2015, Defendant's sentence was reduced to 151 months. Dkt. 102.

On April 22, 2015, Defendant filed a motion to correct judgment pursuant to Fed. R. Crim. P. 35(a). Defendant argued that the amended sentence should have applied a downward departure pursuant to U.S.S.G. 5G1.3. Dkt. 104 at 2. This was treated as a motion pursuant to 18 U.S.C. § 3582(c). Dkt. 116. Because Ninth Circuit precedent at the time "confirmed that, in a resentencing pursuant to § 3582(c)(2), § 1B1.10 provides that a court should not reduce a defendant's term of imprisonment to one less than the minimum of the amended guideline range, even if such a reduction would be proportionate to a downward departure imposed at the original sentencing," the motion was denied. *Id.* at 4.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

Subsequently, in *United States v. Brito,* the Ninth Circuit held that "[i]f the district court at the original sentencing gave credit for time spent in state custody in determining the defendant's sentence, the 'term of imprisonment' on the motion for sentence reduction can include the time spent in both federal and state custody." 868 F.3d at 877. The parties then stipulated to a further reduction in sentence. Dkt. 122. On February 21, 2018, this stipulation was approved, and Defendant's term of imprisonment was reduced to 139 months. Dkt. 123; Dkt. 124 (Amended Judgment).

        a)    Nature and Circumstances of the Offense and History and Characteristics of the Defendant

"The first of the Section 3553(a) factors considers 'the nature and circumstances of the offense and the history and characteristics of the defendant[.]' *United States v. Parker*, --- F. Supp. 3d ---, 2020 WL 2572525, at *11 (C.D. Cal. May 21, 2020).

Defendant argues that his conviction for the distribution of methamphetamine, "did not involve any violence." Dkt. 125 at 28. Defendant characterizes his criminal history as primarily nonviolent acts, and notes that there is no evidence of any such violence after 1998, when he was convicted of battery. *Id.* at 28-29; Defendant adds that he has not had any disciplinary incidents while in custody following his sentencing in this action and has engaged in significant rehabilitation efforts, including earning a GED and enrolling in career planning courses. *Id.* at 29. In response, the Government argues that, given the Defendant's "serious criminal history" and distribution of "a large amount of methamphetamine," this factor weighs against early release. Dkt. 129 at 26.

Although the seriousness of the crime weighs against early release, Defendant has presented evidence of his rehabilitation. *See United States v. Bradley*, No. 2:14-CR-00293-KJM, 2020 WL 3802794, at *7 (E.D. Cal. July 7, 2020) (crediting participation in drug abuse program, completion of self-improvement classes, and earning of GED as "solid evidence of impressive rehabilitation"); *United States v. Sewell*, No. 2:05-cr-00554-TLN, 2020 WL 4251071, at *3 (E.D. Cal. June 5, 2020) (lack of disciplinary actions can be evidence of "rehabilitation as a result of... incarceration").

Given the circumstances presented and the substantial period of time that Defendant has already been in custody, this factor does not weigh against early release.

        b)    Need for the Sentence Imposed

Section 3553(a) requires that a court "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth" in § 3553(a)(2). Section 3553(a)(2) provides that a sentence must (i) "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"; (ii) "afford adequate deterrence to criminal conduct"; (iii) "protect the public from further crimes of the defendant"; and (iv) "provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."

Although Defendant was convicted of a serious crime, he has served most of his sentence. At this time, Defendant has been in custody for approximately eight years and seven months. *See* Dkt 125-4 (calculating time beginning March 1, 2012). As of August 11, 2020, he had accrued 432 days of good time credit, and had received 31 days of credit for jail time. *Id.* Together, these total 118 months, or about nine years and eight months. His projected release date is in December 2021, *id.* at 2, and he will be released to a halfway house in March 2021. Dkt 125-11 at 2. Therefore, a sentence reduction would not undermine the purposes set forth in §

3553(a)(2). Because the sentence must "provide the defendant with… medical care… in the most effective manner," permitting early release would also provide assistance to Defendant who could have greater separation from others than he has while in custody.

The Government contends that the BOP is well-equipped to control the outbreak as USP Lompoc and to attend to Defendant's medical needs. Dkt. 129 at 26. However, given the substantial outbreak that already occurred at USP Lompoc, *see* Dkt. 125 at 27-28, risks are presented including those presented by Defendant's other medical conditions, that support early release under this factor.

        c)       Kinds of Sentences Available

Section 3553(a)(3) directs the Court to consider "the kinds of sentences available." Defendant argues that "if the Court seeks greater assurance that Mr. Curiel will pose no risk to the community, it can simply convert the remainder of Mr. Curiel's sentence to home confinement on supervised release, and order that additional conditions, such as GPS monitoring or substance abuse treatment, be imposed to assure he will not engage in any criminal activity." Dkt. 132 at 10. "The sentencing court, by contrast, has the authority to modify the length of an individual's carceral sentence and to impose home confinement as a condition of supervised release." *Connell*, --- F. Supp. 3d ---, 2020 WL 2315858, at *5 n.2. This factor weighs in favor of early release.

        d)       Sentencing Guidelines

As noted above, the Guidelines Range for Defendant's sentence was between 151 and 188 months. Defendant's current sentence of 139 months already reflects a downward departure from the applicable guidelines. However, district courts in this circuit have held that a below-Guidelines sentence does not itself "foreclose[] the possibility of a reduced sentence on account of subsequent developments." *United States v. Sarkisyan*, No. 15-cr-00234-CRB-15, 2020 WL 2542032, at *2 (N.D. Cal. May 19, 2020).

"[A]lthough the Guidelines should be the starting point and the initial benchmark, district courts may impose sentences within statutory limits based on appropriate consideration of all of the factors listed in § 3553(a), subject to appellate review for reasonableness." *Pepper v. United States*, 562 U.S. 476, 490 (2011) (quoting *Gall v. United States*, 552 U.S. 38, 49-51 (2007)). *See also Parker*, --- F. Supp. 3d ---, 2020 WL 2572525, at *13 (sentencing guidelines are "but one factor" in the § 3553(a) analysis) (quoting *Brown*, 457 F. Supp. 3d at 704).

Because Defendant already has served a substantial portion of his sentence, a further reduction would not be an unwarranted departure. The reduction sought here is consistent with those granted by other district courts in similar cases. *Compare United States v. Martin*, --- F. Supp. 3d ---, 2020 WL 4555796, at *5 (W.D. Wash. Aug. 3, 2020) (granting compassionate release where defendant had served 48 months out of 81-month sentence) *and United States v. Seals*, Cr. No. 13-00653 SOM (11), 2020 WL 3578289, at *5 (D. Haw. July 1, 2020) (granting release when defendant had served a "substantial prison sentence... although it is less than half of his 120-month sentence") *with United States v. Crawford*, No. 4:18-cr-00148-YGR-1, 2020 WL 4260618, at *2 (N.D. Cal. July 24, 2020) (denying compassionate release motion where effective sentence would be 11 months, "far below the applicable guideline range, the mandatory minimum sentence, and the 78-month sentence that was ultimately imposed by the Court").

        e)       Pertinent Policy Statements

District courts in this circuit have found that "because the [Sentencing] Commission never released guidelines with respect to compassionate release under the First Step Act, Section 3553(a)(5)'s 'pertinent policy statement' factor is neutral." *Parker*, --- F. Supp. 3d ---, 2020 WL 2572525, at *13 (quoting *Brown*, 457 F. Supp.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

3d at 704). This principle applies here as well.

    f)  Need to Avoid Unwarranted Sentence Disparities

Section 3553(a)(6) requires a court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." Granting the Motion would result in some disparity with the sentences imposed on others. However, because Defendant has already served approximately 85% of his 139 month sentence, any disparity is modest.

Defendant's conviction required a ten-year, i.e., 120-month, minimum sentence. *See* 21 U.S.C. § 841(b)(1)(A)(viii) (violation involving more than 50 grams of methamphetamine requires "a term of imprisonment which may not be less than 10 years or more than life").² The Ninth Circuit has not addressed whether 18 U.S.C. § 3582(c)(1)(A) permits a district court to reduce a sentence below a statutory minimum. *See United States v. Varnado*, No. 14cr283-LAB, 2020 WL 2512204, at *1 n.1 (S.D. Cal. May 15, 2020) (noting lack of Ninth Circuit authority). At least one district court has ruled that such a reduction is permitted. *United States v. Grubbs*, No. CR16-228 TSZ, 2020 WL 3839619, at *3 n.3 (W.D. Wash. July 8, 2020). The Government has not argued that the statutory minimum precludes a sentence reduction in this case. It is also noteworthy that Defendant has served 118 months of the 120-month minimum. For these reasons, this factor does not preclude an early release.

    g)  Restitution to Victims

Finally, Section 3553(a)(7) requires the Court to consider whether the sentence is consistent with "the need to provide restitution to any victims of the offense." ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Defendant was not ordered to pay any restitution. Therefore, this factor is neutral.

    \*    \*    \*

A consideration and balancing of all of the relevant § 3553(a) factors supports the early release of Defendant.

  2.  Danger to the Community

The final step in the analysis is whether Defendant would pose a danger to the community if he is released. Section 1B1.13 requires a court to consider the factors in the Bail Reform Act, 18 U.S.C. § 3142(g). These include:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
> (2) the weight of the evidence against the person;
> (3) the history and characteristics of the person, including--
>   (A) the person's character, physical and mental condition, family ties, employment, financial

---

² The First Step Act of 2018 permitted sentencing courts to impose a below-minimum sentence for 21 U.S.C. § 841, provided that the defendant did not have "more than 4 criminal history points, excluding any criminal history points resulting from a 1-point offense, as determined under the sentencing guidelines." 18 U.S.C. § 3553(f)(1)(A). ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

> resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

The Government primarily argues that the seriousness of Defendant's offense in this action shows that he is still a danger to the community. Dkt. 129 at 23.

Defendant argues that he will be subject to the conditions of supervised release, which bar any criminal conduct or use of controlled substances. Dkt. 125 at 30; Dkt. 124 at 1, 3 (terms of supervised release). He adds that he will have significant support from his family, that he will reside with his mother and that he plans to attend outpatient treatment for his drug addiction and his depression, as required by the terms of his supervised release. *Id.*; Dkt. 124 at 1. His reentry plan includes that the outpatient provider "can provide cost effective substance abuse and mental health treatment enabling them to provide the dual diagnosis treatment [Defendant] needs." Dkt. 125-13 at 3. Furthermore, the Probation Officer, with the approval of the Defendant and defense counsel, may place Defendant in a residential drug treatment program approved by the United States Probation Office. Dkt. 124 at 1.

Defendant has also submitted evidence of what he has accomplished while in custody. As noted, this includes his completion of a GED, as well as taking courses relating to career planning and reentry into the community. Dkt. 125-1 at 2-4. He has also completed drug education and other drug treatment courses. *Id.* at 4.



Although this evidence is significant, it is outweighed by the showing of rehabilitation Defendant. As noted, his has not been disciplined while in custody, has completed a GED and other courses. This led to Defendant's accrual of more than a year of Good Conduct Time credits. As noted, he is presently schedule to be released to a halfway house in March 2021. Equally significant is that Defendant has completed drug rehabilitation programs while in custody and plans to continue counseling upon release, as required by the terms of supervised release. Dkt. 124 at 1. *See, e.g., United States v. Legaspi*, No.: 18-cr-1671-2-L, 2020 WL 5642748, at *4 (S.D. Cal. Sept. 22, 2020) ("The Court finds that Defendant's drug addiction, criminal history, and inability to successfully complete terms of parole or probation indicate that…he would be a danger to others if the Court

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

was to grant his motion for compassionate release"); *United States v. Collins*, No. 6:13-cr-344-MC, 2020 WL 5372087, at *2 (D. Or. Sept. 8, 2020) (denying compassionate release when defendant continued to abuse drugs in prison).

███████████████████████████████████████████████; Dkt. 125 at 13 (prior to his current sentence, Defendant had never been sentenced to a term of more than 16 months). ████████████████████████████████████████████. However, they do not preclude compassionate release. *Compare United States v. Zazweta*, No. 4:16-cr-176-BLW, 2020 WL 5577876, at *1 (D. Idaho Sep. 17, 2020) (defendant presented danger to the community when she had "multiple convictions related to the possession and distribution of controlled substances," had "a long criminal history dating back to 1983," and "qualifie[d] as a career offender under the Sentencing Guidelines"); *United States v. Gonzalez*, No. 2:18-CR-0051-TOR-1, 2020 WL 4757900, at *3 (E.D. Wash. Aug. 17, 2020) (defendant remained a danger to the community in light of "significant and lengthy prior criminal history involving harassment, violation of protection orders, and domestic violence").

The Government also argues that Defendant's "history reflects an unwillingness to follow rules and a disregard for the welfare of others," and suggests that this shows that Defendant will not comply with California's shelter-in-place order and associated public health orders issued in response to COVID-19. Dkt. 129 at 24-25. This argument is not persuasive. The Government does not identify specific reasons why Defendant is likely to violate such public health orders other than his criminal history. Indeed, it is reasonable to conclude that it is likely that "the potentially dire consequences to defendant's health if he violates the conditions of supervised release and is returned to custody will motivate him to be compliant and cooperative." *Grubbs*, 2020 WL 3839619, at *3.

**III.    Conclusion**

For the reasons stated in this Order, the necessary elements of compassionate release have been established. Therefore, the Motion is **GRANTED**. A separate Order Modifying Sentence and Setting Conditions of Supervised Release will be issued with this one.

**IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　:

Initials of Deputy Clerk   vrv

cc: Bureau of Prisons
　　United States Probation Office